IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RANDY McCAA,

                OPINION AND ORDER

          Plaintiff,

                13-cv-574-bbc

   v.

MICHAEL MEISNER, JANEL NICKEL,
KAREN ANDERSON, DAWN LAURENT,
GARY MAIER, DONALD MORGEN,
JENNIFER M. BAHR, DIVINE SAVIOR HOSPITAL
and ABC FICTITIOUS INSURANCE CO.,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Pro se prisoner Randy McCaa has filed a proposed amended complaint in response to the court's October 18, 2013 order. In his original complaint, he alleged that he intentionally overdosed on pills three times between July 2011 and July 2012, but various prison officials at the Columbia Correctional Institution did not adopt any "safety protocols" to prevent him from overdosing in the future, such as crushing up his pills so he could not stockpile them or giving him medication in liquid form. Plaintiff says that, as a result of defendants' alleged inaction, he overdosed again in October 2012. Plaintiff asserted this claim under the Eighth Amendment against defendants Michael Meisner, Janel Nickel, Karen Anderson, Dawn Laurent, Gary Maier and Donald Morgen.

     In both his original complaint and a separate document, plaintiff alleged that hospital

1

staff did not give him adequate treatment when he was taken to the emergency room in October 2012. In his original complaint, he raised a claim under the Eighth Amendment against defendants Jennifer Bahr and Divine Savior Hospital, but in his supplemental pleading, he raised claims under 42 U.S.C. § 1395dd and Wisconsin common law.

In the October 18 order, dkt. #17, I noted two problems that plaintiff would need to address in an amended complaint. With respect to his claims against defendants Meisner, Nickel, Anderson, Laurent, Maier and Morgen, plaintiff did not allege that defendants knew that he had been stockpiling pills or even that he had harmed himself by overdosing on pills before October 2012. That was a problem because, under the Eighth Amendment, plaintiff is required to show that defendants *knew* of a substantial risk that he was going to harm himself, but they consciously refused to take reasonable measures to prevent the harm. Farmer v. Brennan, 511 U.S. 825 (1994). Although defendants' lack of knowledge before the October 2012 incident would not necessarily prevent a claim for injunctive relief if defendants still were refusing to take reasonable action, any request for an injunction would be moot because plaintiff has been transferred to a different prison where none of the defendants are employed. Ortiz v. Downey, 561 F.3d 664, 668 (7th Cir. 2009).

With respect to plaintiff's claims against defendant Bahr and the hospital, I could not determine the scope of the claims because he asserted different allegations and legal theories in the different documents he filed. Accordingly, I gave plaintiff an opportunity to file a single amended complaint that addressed these problems.

Now plaintiff has filed an amended complaint in which he dropped his claims against

defendant Morgen and any Eighth Amendment claim against defendant Bahr and the hospital. Although he attempted to fix the problems identified by the court, his new allegations reveal different problems with his claims.

First, in the October 18 order, I understood plaintiff to be alleging that defendants had failed to prevent him from stockpiling *his* medications, which they could have accomplished by taking steps such as crushing plaintiff's pills before administering them or administering the medication in liquid form. However, plaintiff admits in his amended complaint that he had acquired the pills he took in October 2012 from *other* prisoners. Am. Cpt. ¶ 82, dkt. #19. In fact, the documents attached to plaintiff's amended complaint suggest that the reason plaintiff had to rely on other prisoners for the pills is that prison staff *had* taken measures to minimize the risk of more overdoses, such as temporarily discontinuing plaintiff's psychotropic medication, prescribing low doses and administering medication in liquid form. Dkt. ##19-20 and 19-37.

Even if I assume that plaintiff has alleged adequately that defendants knew about his previous overdoses and knew that he had stockpiled medication in the past, he does not allege facts showing that defendants were aware of a substantial risk that plaintiff would obtain dangerous medication from other prisoners. Further, he does not identify any reasonable steps that defendants could have taken to prevent him from getting other prisoners' medication. Accordingly, I am dismissing plaintiff's claim against defendants Meisner, Nickel, Anderson, Laurent and Maier for his failure to state a claim upon which relief may be granted.

With respect to defendant Bahr and the hospital, plaintiff alleges that Bahr was aware that he had a "large amount of various medications he had [i]ngested that was stockpiled from other inmate prisoners," dkt. #19, ¶ 82, but she used plaintiff's own medication chart to determine the appropriate treatment, which was limited to "an IV, continuous pulse Ox monitoring and cardiac monitor[ing] for two hours." Id. at ¶ 85. She did not conduct tests to determine whether "various unknown medication[s] [were] toxic or non-toxic." Id. ¶ 87. Plaintiff says that, for a day or two after he was discharged, he suffered from stomach cramping, vomiting, cold sweats, fast heart rate and severe diarrhea. Id. at ¶ 93.

The only federal claim plaintiff brings against defendant Bahr and the hospital is 42 U.S.C. § 1395dd, which is called the Emergency Medical Treatment and Active Labor Act. Plaintiff does not identify a particular provision of the statute that he believes defendants violated, but my own review of the statute uncovered only one potentially relevant provision:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C.A. § 1395dd(a). I understand plaintiff to contend that defendant Bahr did not conduct "an appropriate medical screening examination" to determine whether plaintiff suffered from "an emergency medical condition." (Section 1395dd(b) imposes certain treatment requirements if "the hospital determines that the individual has an emergency

4

medical condition," but this provision does not apply because, by plaintiff's own assertion, defendants determined that plaintiff did not have a serious problem.)  Under § 1395dd(d)(2)(A), "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate."

Plaintiff's allegations are not sufficient to state a claim upon which relief may be granted under § 1395dd.  First, as stated in § 1395dd(d)(2)(A), a cause of action under the statute is limited to hospitals.  Plaintiff cannot sue defendant Bahr under the Act.

Second, an individual may sue the hospital only if he "suffers personal harm as a direct result of a participating hospital's violation of a requirement."  In this case, although plaintiff alleges that he suffered from various symptoms for a day or two after he was discharged, he does not identify any reason to believe that a more thorough screening could have prevented those symptoms from occurring.

Finally, an "emergency medical condition" is "a medical condition manifesting itself by acute symptoms of sufficient severity that the absence of immediate medical attention could reasonably result in imminent danger of death or serious disability." Thomas v. Christ Hospital & Medical Center, 328 F.3d 890, 893 (7th Cir. 2003) (quoting 42 U.S.C. § 1395dd(e)(1)). Although plaintiff alleges that he experienced pain and discomfort for a day or two after he was discharged, he does not allege that any of his symptoms could have "reasonably result[ed] in imminent danger of death or serious disability."  Thus, even if I

5

assume that the hospital could have prevented plaintiff's symptoms, plaintiff still cannot state a claim against the hospital under § 1395dd.

Although it seems unlikely that plaintiff will be able to cure the problems identified in this order, because the problems are different from the ones discussed in the October 18 order, I will give him one more chance to file an amended complaint before closing the case. Because jurisdiction over plaintiff's state law claim is contingent on plaintiff's federal claims, 28 U.S.C. § 1367, I will refrain from screening the state law claim until I determine whether plaintiff may proceed with any of his claims under federal law.

ORDER

IT IS ORDERED that plaintiff Randy McCaa's amended complaint, dkt. #19, is DISMISSED for his failure to state a claim upon which relief may be granted. Plaintiff may have until December 4, 2013, to file another amended complaint that addresses the problems discussed in this order. If plaintiff fails to respond to the order or files an amended complaint that does not correct the problems, I will dismiss the complaint with prejudice and assess a strike under 28 U.S.C. § 1915(g).

Entered this 19th day of November, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge